Nathan D. Chapman (SBN 338735)
nchapman@kcozlaw.com
Tyler Dobberstein (SBN 339824)
tdobberstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, California 90071
Telephone:(213) 493-3980
Facsimile: (404) 400-7333

Attorneys for Defendant
Charter Communications, LLC

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN ZUCKERMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHARTER COMMUNICATIONS, LLC, a limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 3:24-cv-00128-WQH-BGS<br><br>**DEFENDANT CHARTER COMMUNICATIONS, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION (AND DISMISS, OR ALTERNATIVELY, STAY CASE) AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hon. William Q. Hayes<br><br>Hearing Date: April 8, 2024<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>[*Filed Concurrently with Declarations of Nathan D. Chapman and John Fries and Request for Judicial Notice*] |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 8, 2024, 2024, or as soon thereafter as the matter may be heard, in Courtroom 14B (14th Floor) of the above-captioned Court, located at the United States Courthouse, 333 West Broadway, San Diego, California 92101, Defendant Charter Communications, LLC ("Charter") will, and hereby do, move this Court, for an Order: (1) compelling arbitration pursuant to the parties' Mutual Arbitration Agreement, which requires that Plaintiff Jordan Zuckerman resolve his claims through Charter's Solution Channel dispute resolution program and, if necessary, binding arbitration; and (2) dismissing this action or, alternatively, staying the action pending the outcome of the arbitration. Charter brings this Motion based on the Parties' written arbitration agreement, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, and on the grounds that Plaintiff entered into an agreement by which he explicitly agreed to arbitrate all his employment-related disputes with Charter, as more specifically described in the Memorandum of Points and Authorities.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Nathan D. Chapman ("Chapman Decl."), the Declaration of John Fries ("Fries Decl.") filed concurrently herewith, the complete file and record in this action, and upon such further evidence and argument as may be presented prior to or at the time of the hearing on the Motion.

DATED: March 4, 2024       KABAT CHAPMAN & OZMER LLP

By:   *s/ Nathan D. Chapman*
      Nathan D. Chapman

      Attorneys for Defendant
      Charter Communications, LLC

# MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION

Plaintiff improperly filed his claims arising out of his employment with Charter in court, despite his unambiguous agreement to submit those claims to alternative dispute resolution through Charter's Solution Channel Program, which includes arbitration as a final step.   Plaintiff's refusal to abide by his agreement to arbitrate has forced Charter to file the instant Motion, which the Court should grant in full for the reasons set forth herein.

Specifically, by failing to opt out of Charter's Solution Channel Program within 30 days of that program's announcement in October 2017, Plaintiff agreed to be bound by a "Mutual Arbitration Agreement," which provides that, "***any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship . . . must be resolved through binding arbitration by a private and neutral arbitrator***." (Declaration of John Fries ("Fries Decl."), ¶ 11, Ex. C, § A (emphasis added).) In violation of that agreement, Plaintiff filed the instant court action against Charter, alleging various employment-related claims subject to arbitration under the Mutual Arbitration Agreement. When Charter reminded Plaintiff that his claims were covered by the Agreement, Plaintiff refused to dismiss any of his claims in favor of arbitration.

Plaintiff's refusal is meritless. It is beyond dispute that Plaintiff entered into a valid agreement to arbitrate. Nor is there any dispute that Plaintiff's employment-related claims fall squarely within the scope of the Mutual Arbitration Agreement, as they all clearly qualify as "covered claims" under the Agreement. Finally, Plaintiff cannot show that the Mutual Arbitration Agreement is unenforceable due to unconscionability, as he cannot possibly meet his burden of proving "procedural unconscionability" under California law because he was provided an opportunity to opt out of the program but declined to do so.

Accordingly, pursuant to the on-point authority discussed below, and given the

FAA's liberal policy requiring enforcement of arbitration agreements, Charter respectfully requests that the Court compel Plaintiff to submit his claims to the Solution Channel Program and dismiss this action or, alternatively, stay the action pending the outcome of arbitration.

## II.     RELEVANT FACTUAL BACKGROUND

**A.     Plaintiff Agreed to Arbitrate His Claims.**

Plaintiff alleges he was a Charter employee from approximately October 2015 to July 2022. (Compl. ¶ 14, ECF No. 1-2.) On October 6, 2017—while Plaintiff was employed by Charter—Charter implemented "Solution Channel," an alternative dispute resolution program that included arbitration as a final step. Charter announced its adoption of the Solution Channel program to all active non-union employees below the level of Executive Vice President, including Plaintiff, by email. (Fries Decl. ¶¶ 5–8, 21, Exs. A, E.) Specifically, the announcement email notified Plaintiff (and other employees) that "[i]n the unlikely event of a dispute not resolved through normal channels, Charter has launched Solution Channel, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration." (*Id.* ¶¶ 8, 21, Exs. A, E.)  The email further explained that "[b]y participating in Solution Channel, you and Charter both waive the right to initiate or participate in court litigation . . . involving a covered claim . . . ." (*Id.*) The announcement expressly informed employees that they would be enrolled in the program unless they "opt[ed] out of participating in Solution Channel within the next 30 days," i.e., by November 5, 2017. (*Id.* ¶¶ 8–9, 21, Exs. A, E.) The Solution Channel web page was available to employees on "Panorama" (Charter's web-based employee database) and the announcement included a link to that web page on Panorama, which included additional information about Solution Channel and a link to Charter's Mutual Arbitration Agreement. (*Id.* ¶ 10–11, Exs. B, C.) The Solution Channel web page also included the following information:

>**Opting Out of Solution Channel**
>
>If you do not opt out of Solution Channel within the designated time, you will be automatically enrolled in Solution Channel and considered to have consented to the terms of the Mutual Arbitration Agreement at that time. To opt-out of Solution Channel, please click here. In the new window that will open, click Main Menu> Self-Service->Solution Channel.

(*Id.* ¶ 12.) If an employee selected the "click here" link, the PeopleSoft system was opened. (*Id.* ¶ 13.) An employee could then sign into PeopleSoft and opt out of the Solution Channel Program. (*Id.* ¶¶ 14–15, Ex. D.)

Employees who opted out of the Program received an email from Charter confirming they had exercised their right to opt out of the Program. (*Id.* ¶ 16.) Employees who did not opt out of the Program by following these steps on or before November 5, 2017, were enrolled in the Program. (*Id.* ¶ 17.)

Charter maintains a list of employees to whom the Solution Channel announcement was emailed on October 6, 2017, and Plaintiff is included on that list. (*Id.* ¶¶ 20–21, Ex. E.) Charter also maintains a record of employees who opted out of the Program between October 6 and November 5, 2017, and Plaintiff's name does not appear in that record. (*Id.* ¶¶ 19, 22.) Charter's records reflect that Plaintiff was a participant in the Solution Channel Program as of November 6, 2017 and since. (*Id.* ¶ 23, Ex. F.) Accordingly, Plaintiff is bound by the Agreement.

**B.     The Agreement Encompasses the Claims at Issue Here.**

The Agreement emphasized the following "NOTICE," in capital letters, at the top of the first page:

> PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), ***YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION***. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE

THE DISPUTE DECIDED BY A JURY.

(*Id.*, Ex. C at 1 (emphasis added).)

The Agreement provides that Plaintiff and Charter "mutually agree" that "***any dispute arising out of or relating to [Plaintiff's]*** pre-employment application and/or ***employment with Charter or the termination of that relationship*** . . . must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by [Plaintiff] and Charter," unless the dispute is "specifically excluded" by the express terms of the Agreement. (*Id.* § A (emphasis added).) The Agreement also specifies that "covered claims" include

> ***all disputes, claims, and controversies . . . related to pre-employment, employment, employment termination or post-employment related claims, whether the claims are denominated as tort, contract, common law, or statutory claims*** (whether under local, state or federal law), including without limitation claims for: . . . . "unlawful termination[,] . . . unlawful discrimination or harassment (including such claims based upon . . . age . . . [and] disability . . .) . . . unlawful retaliation[,] [and] unlawful denial of accommodation or failure to engage in the interactive process," among other claims, "whether arising before, during or after the termination of employment.

(*Id.* § B.1 (emphasis added).)

**C.   Plaintiff Breached His Agreement by Suing Charter and Refusing to Arbitrate.**

Despite his clear agreement to arbitrate any employment-related claims against Charter, Plaintiff filed this lawsuit against Charter on November 15, 2023, asserting claims for: (1) discrimination in violation of California Government Code §§ 12940 *et seq.*; (2) retaliation in violation of California Government Code §§ 12940 *et seq.*; (3) failure to provide reasonable accommodation in violation of California Government Code §§ 12940 *et seq.*; (4) failure to engage in a good-faith interactive process in violation of California Government Code §§ 12940 *et seq.*; (5) failure to prevent discrimination and retaliation in violation of California Government Code § 12940(k); (6) declaratory judgment; and (7) wrongful constructive termination in violation of public policy. (Compl. ¶¶ 41–103, ECF No. 1-2.)

1    These claims clearly fall within the scope of the Agreement, and thus, are subject
2    to arbitration. Accordingly, when Charter received Plaintiff's Complaint, it promptly
3    informed Plaintiff's counsel that Plaintiff's claims were subject to arbitration by letter
4    and email on January 24, 2024 and provided counsel with a copy of the Agreement and
5    the incorporated Solution Channel Guidelines. (Chapman Decl. ¶ 3, Ex. 1.) Charter
6    also requested that Plaintiff dismiss his action in favor of arbitration per the terms of
7    the Agreement. (*Id.* ¶ 2.) However, despite Charter's best efforts, Plaintiff refused to
8    submit his claims to arbitration, requiring Charter to file the instant motion, and to
9    protect its rights and the benefit of its (arbitration) bargain. (*Id.* ¶ 4.)

### III.     ARGUMENT AND CITATIONS TO AUTHORITIES

**A.     Applicable Legal Standard**

    **1.     Federal Public Policy Strongly Favors Arbitration.**

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further requires courts to compel "parties to proceed to arbitration in accordance with the terms of the[ir] [arbitration] agreement" 9 U.S.C. § 4. As the Supreme Court has repeatedly emphasized, the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and internal quotation marks omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Because of the strong federal policy requiring enforcement of private arbitration agreements, the burden on the party moving to compel arbitration is low. The movant need only make a *prima facie* showing that an arbitration agreement binds the other

party. *See Lee v. DoNotPay, Inc.*, 2023 WL 8242158, at *2 (C.D. Cal. July 20, 2023). "Because the FAA favors arbitration, the burden is on the plaintiff to prove that the arbitration agreement is . . . not enforceable." *Id.*; *see also Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) ("[T]he party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable").

### 2. The FAA Governs the Mutual Arbitration Agreement.

As shown below, every court to examine the Agreement has held that it is governed by the FAA. First, the FAA applies because Plaintiff and Charter acknowledged and agreed that the FAA would govern the Agreement. (Fries Decl., § 11, Ex. C, § R) ("This agreement will be governed by the Federal Arbitration Act."); *see, e.g., Lainer v. Uber Tech., Inc.*, No. 2:15-cv-09925, 2016 WL 7444925, at *2 (C.D. Cal. May 11, 2016) (finding FAA applicable where arbitration provision stated "[t]he Federal Arbitration Act will govern the interpretation and enforcement of" the arbitration agreement); *accord Gonzales, LLC v. Charter Commc'ns.*, LLC, 497 F. Supp. 3d 844, 848 (C.D. Cal. 2020); *Castorena v. Charter Commc'ns., LLC*, No. 2:18-cv-07981, 2018 WL 10806903, at *2 (C.D. Cal. Dec. 14, 2018); *Esquivel v. Charter Commc'ns, Inc.*, No. CV 18-7304, 2018 WL 10806904, at *2 (C.D. Cal. Dec. 6, 2018); *see also Delgado v. Am. Jewish Univ.*, No. BC630346, 2017 WL 2672479, at *4 (Cal. Super. Ct. June 13, 2017) (holding FAA applicable to employment contract, partly because arbitration provision "itself states that the arbitration will be subject to [] arbitration pursuant to the provisions of the FAA").

Second, the FAA governs because it applies to any contract "evidencing a transaction involving commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) (quoting FAA § 2); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (recognizing FAA's use of term "involving commerce" signals "broadest possible exercise of Congress' Commerce Clause power" and "encompasses a wider range of transactions than those actually 'in commerce'"); *Cronus Invs., Inc. v.*

*Concierge Servs.*, 35 Cal. 4th 376, 380, 383-84 (holding federal law governs arbitration issues in contracts affecting interstate commerce). Charter is a telecommunications company organized under the laws of the State of Delaware, with its principal place of business outside of California, providing its services nationwide, and employing (among other places) California residents; thus, there is no question Charter operates within the flow of interstate commerce, as California courts have repeatedly held *See Castorena*, 2018 WL 10806903 at *2, n.2 (under same Agreement, applying FAA because "[Charter] is engaged in interstate commerce as an out-of-state company employing California residents"); *see also* Fries Decl. ¶ 4 (describing Charter's involvement in interstate commerce).

**B.     The Parties Entered into a Valid, Enforceable Mutual Arbitration Agreement.**

The Agreement is unquestionably valid and enforceable, as numerous U.S. District and state courts in California (and elsewhere) have repeatedly held. *See, e.g., Huberman v. Spectrum*, No. 19STCV13856, 2019 WL 13403233, at *3–4 (Cal. Super. Ct. Oct. 31, 2019); *Christmas v. Charter Commc'ns, LLC*, No. 19STCT45265, 2020 WL 13838422 (Cal. Super. Ct. Aug. 12, 2020); *Booker v. Charter Commc'ns, LLC*, No. 20STCV07680, 2020 WL 13838423, at *3–6 (Cal. Super. Ct. July 20, 2020); *Carranza v. Charter Commc'ns, LLC*, No. 21STCV08223 (Cal. Super. Ct. Sept. 15, 2021) (RJN, Ex. 4); *Gonzales v. Charter Commc'ns., LLC*, 497 F. Supp. 3d 844, 850–54 (C.D. Cal. 2020); *Castorena*, 2018 WL 10806903, at *4–5; *Ashirwad v. Charter Commc'ns, Inc.*, No. 21-cv-02101, 2023 WL 3564938 (S.D. Cal. Mar. 20, 2023); *Maharaj v. Charter Commc'ns, Inc.*, No. 20-cv-00064, 2021 WL 5014352, at *5 (S.D. Cal. Oct. 27, 2021); *Esquivel v. Charter Commc'ns, Inc.*, No. CV 18-7304, 2018 WL 10806904, at *7–10 (C.D. Cal. Dec. 6, 2018); *Gennarelli v. Charter Commc'ns, Inc.*, 2:19-cv-09635, 2021 WL 4826612, at *4 (C.D. Cal. April 22, 2021); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-cv-1724, 2019 WL 2269974, at *2–4 (S.D. Cal. May 28, 2019); *accord Charter Commc'ns, Inc. v. Garfin*, No. 20 Civ. 7049, 2021 WL 694549, at *8–13 (S.D.N.Y. Feb.

23, 2021); *Hughes v. Charter Commc'ns, Inc.*, No. 3:19-cv-01703, 2020 WL 1025687, at *5–11 (D.S.C. Mar. 2, 2020); *Krohn v. Spectrum Gulf Coast, LLC*, No 3:18-cv-2722, 2019 WL 4572833, at *3–4 (N.D. Tex. Sept. 19, 2019); *Osborne v. Charter Commc'ns, Inc.*, No. 4:18-cv-1801, 2019 WL 2161575, at *2–3 (E.D. Mo. May 17, 2019); *Moorman v. Charter Commc'ns, Inc.*, No. 18-cv-820, 2019 WL 1930116, at *3–7 (W.D. Wis. May 1, 2019); *Scarpitti v. Charter Commc'ns, Inc.*, No. 18-cv-02133, 2018 WL 10806905, at *2–4 (D. Colo. Dec. 7, 2018). Plaintiff cannot overcome this authority or otherwise carry the burden of showing the Agreement is unenforceable.

The existence of a valid arbitration agreement is determined under generally applicable state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Mitchell v. Am. Fair Credit Ass'n, Inc.*, 99 Cal. App. 4th 1345, 1355–56 (2002). Under California law, a contract is valid if four elements are satisfied: (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) sufficient cause or consideration. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir.1999); *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977); Cal. Civ. Code § 1550 (defining elements). Here, these elements are easily satisfied.

Preliminarily, there can be no dispute that the first and third elements are met, as Plaintiff and Charter could contract with each other, and the Agreement concerns a lawful object—*i.e.*, an agreement to arbitrate. *See, e.g., Maharaj*, 2021 WL 5014352, at *5 (arbitration is lawful object); *Paxton v. Macy's Stores, Inc.*, No. 1:18-cv-00132, 2018 WL 4297763, at *4 (E.D. Cal. Sept. 7, 2018) (same).

Likewise, the second element—mutual consent—is established, as undisputed facts show that Plaintiff assented to the Agreement because he did not opt out of arbitration within the appropriate time. "Under California's law of contracts, a contract may be express (that is, either written or oral) or implied in fact (that is, one whose 'existence and terms . . . are manifested by conduct')." *Douglass v. Serenivision, Inc.*, 20 Cal. App. 5th 376, 387 (2018) (alteration in original) (quoting *Retired Emps. Ass'n*

*of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011)). And it is well-settled California law that: (1) "an employer may unilaterally alter the terms of an employment agreement, provided such alteration does not run afoul of the Labor Code;" and (2) an employee (like Plaintiff) "who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Schachter v. Citigroup*, Inc., 47 Cal. 4th 610, 619–20 (2009) (quotation marks omitted). Here, the evidence shows that Charter sent, and Plaintiff received, the Solution Channel Announcement, and he therefore was given notice of Charter's implementation of Solution Channel, his ability to opt out of the program within 30 days if he so desired, and that he would be bound by the Agreement if he did not opt out. (Fries Decl., ¶¶ 19–23, Ex. E.) Plaintiff's continued employment after receiving the Solution Channel Announcement and notice of his right to opt out thus constituted implied-in-fact acceptance of the Agreement, which was proposed by Charter as a new term of his employment (though one he was free to reject without losing his job).  In fact, California courts have routinely upheld arbitration agreements (including this very Agreement) under similar circumstances. *See, e.g., Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 419–20, 422 (2000) (holding—under general principles of contract law—even where there is no signed agreement, continuing to work for employer after receiving dispute resolution terms constituted acceptance of agreement to arbitrate); *Ashirwad*, 2023 WL 3564938, at *4–6 (same Agreement enforceable where plaintiff was sent Solution Channel Announcement and failed to opt out); *Castorena*, 2018 WL 10806903, at *4 (same); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) (agreement to arbitrate enforceable where plaintiff given 30 days to opt out).

The final element—consideration—is also established by undisputed facts, including (among other things) that the Agreement imposes a mutual obligation on both Plaintiff and Charter. *See, e.g., Beggs Bros. Fruit Co. v. United Farmers Ass'n of Cal.*, 41 Cal. App. 2d 766, 770 (1940) (holding mutual obligation to arbitrate constitutes

sufficient consideration for arbitration agreement); *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other"), overruled on other grounds by *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996); *Gennarelli*, 2021 WL 4826612 at *4 (same, under instant Agreement). In fact, the Agreement specifically states that the Parties' mutual consideration for entering into the employment relationship was their agreement to arbitrate their disputes. (Fries Decl. ¶ 11, Ex. C, §§ A, S.)

Accordingly, Plaintiff is bound by the terms of the Agreement.

**C. The Parties Delegated to the Arbitrator the "Gateway" Issues of Arbitrability.**

Ordinarily, in deciding whether to compel arbitration under the FAA and California law, this Court must determine two "gateway" issues: (1) whether a valid agreement to arbitrate exists, and, if so, (2) whether the agreement encompasses the dispute at issue. *Omar v. Ralphs Grocery Co.*, 118 Cal. App. 4th 955, 957 (2004). However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably agree to such delegation. *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880, 892 (2017); *Dream Theater v. Dream Theater*, 124 Cal. App. 4th 547, 552 (2004) ("The issue of who should decide arbitrability turns on what the parties agreed in their contract"); *Rent–A–Center, W. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Here, the parties delegated resolution of these "gateway" issues to the arbitrator, as the Agreement expressly provides that "all disputes related to the arbitrability of any claim or controversy" "will be submitted to arbitration." (Fries Decl., Ex. C § B.3.) Indeed, directly-on-point authority compels the conclusion that the delegation clause "clearly and unmistakably indicates that the parties intended to arbitrate all gateway

arbitrability issues, including waiver, scope, and unconscionability." *Maharaj*, 2021 WL 5014352, at *9 (emphasis added) (enforcing identical delegation clause); *Gennarelli*, 2021 WL 4826612, at *4–5 (arguments that go to the "scope and validity" of the Agreement "must be decided by the arbitrator"); *Ashirwad*, 2023 WL 3564938, at *6 (enforcing same delegation clause; holding the delegation clause "clearly and unmistakably delegates arbitrability questions to the arbitrator," and leaving questions of unconscionability to arbitrator); *see also Aanderud*, 13 Cal. App. 5th at 892 (parties' agreement to arbitrate gateway questions of arbitrability enforceable so long as language of clause is "clear and unmistakable" and delegation is "not revocable under state contract defenses").

Thus, the arbitrator, rather than this Court, should decide any threshold arbitrability issues raised by Plaintiff. Even if the Court were to reach such issues, however, it should require Plaintiff to arbitrate his claims, as shown below.

**D.    The Agreement Clearly Encompasses Plaintiff's Claims.**

Plaintiff's claims fall squarely within the scope of the Agreement, which applies broadly to all claims "***arising out of or relating to***" his "***employment with Charter or the termination of that relationship***," and explicitly covers claims for "unlawful termination[,] . . . unlawful discrimination or harassment (including such claims based upon . . . age . . . [and] disability . . .) . . . unlawful retaliation[,] [and] unlawful denial of accommodation or failure to engage in the interactive process." (Fries Decl., ¶ 11, Ex. C §§ A, B.1 (emphasis added).)  There is no doubt that Plaintiff's claims here arise out of or and relate to his employment with Charter and the termination thereof. *(See generally* Compl., ECF No. 1-2.) Accordingly, Plaintiff must submit all of his claims to arbitration.

**E.    The Agreement is Not Unconscionable or Otherwise Unenforceable.**

Under the FAA and California law, arbitration agreements are presumed to be valid and enforceable. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

To the extent Plaintiff contends the Agreement is unconscionable, he has the heavy burden to prove that it is **both** procedurally **and** substantively unconscionable under state law contract principles. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("the party opposing arbitration bears the burden of proving any defense, such as unconscionability"); *Baltazar v. Forever 21*, Inc., 62 Cal. 4th 1237, 1243 (2016) ("procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause"); *Armendariz*, 24 Cal. 4th at 783 (same); *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 67 (2020) ("Both procedural and substantive unconscionability must be shown for the defense to be established."); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration").

As to procedural unconscionability, as numerous other courts have held, the Agreement contains no elements of surprise or undue oppression and is not a contract of adhesion as Plaintiff was provided the opportunity to opt-out. *See Ahmed*, 283 F.3d at 1199 (plaintiff "was not presented with a contract of adhesion because he was given the opportunity to opt-out of the . . . arbitration program by mailing in a simple one-page form"); *see also Booker*, No. 20STCV07680, at 10 (enforcing same Agreement and rejecting plaintiff's argument that Agreement was presented as a condition of employment because plaintiff "was provided the opportunity to 'opt-out'"); *Huberman*, No. 19STCV13856, at 7 (finding that "the 30-day opt out period ameliorates any procedural unconscionability"); *Carranza*, No. 21STCV08223, at 8 (finding no procedural unconscionability because "Plaintiff was not required to sign or agree to the [] Agreement as a condition of employment"); *Esquivel*, 2018 WL 10806904, at *8 (under same Agreement, finding plaintiff had "no hope of making out procedural unconscionability" where he "was provided a 'meaningful opportunity' to review the arbitration agreement" and "the terms of the agreement were clear" and "optional" (quoting *Ahmed*, 283 F.3d at 1199)).

| | |
|---|---|
| 1 | Moreover, Charter provided Plaintiff ample opportunity to review the terms of |
| 2 | the arbitration agreement. As multiple courts have already recognized, the Solution |
| 3 | Channel Announcement was straightforward and clearly explained the program, the |
| 4 | nature of dispute resolution through arbitration (including that the employee would be |
| 5 | waiving the right to court litigation), and each employee's ability to opt out of the |
| 6 | program within 30 days. *See Booker*, No. 20STCV07680, at 7–8 (finding language in |
| 7 | Solution Channel Announcement "sufficiently shows the nature of the agreement and |
| 8 | the terms were not hidden"); *Huberman*, No. 19STCV13856, at 7–8 (finding same |
| 9 | language clear and not misleading); *accord Castorena*, 2018 WL 10806903, at *5 |
| 10 | ("[T]he email was written in plain and unambiguous language" and the Mutual |
| 11 | Arbitration Agreement "was easily accessible to employees at all times on the company- |
| 12 | wide intranet site"); *Esquivel*, 2018 WL 10806904, at *8 (finding plaintiff had "no hope |
| 13 | of making out procedural unconscionability" where he "was provided a 'meaningful |
| 14 | opportunity' to review the arbitration agreement" and "the terms of the agreement were |
| 15 | clear" (quoting *Ahmed*, 283 F.3d at 1199)). |
| 16 | And the Mutual Arbitration Agreement itself lacks any of the hallmarks of |
| 17 | procedural unconscionability—fine print buried in a lengthy document or an obscure |
| 18 | title misrepresenting the document. Indeed, the first paragraph in the four-and-a-half- |
| 19 | page Mutual Arbitration Agreement urges the reader, in all capital letters, to read it |
| 20 | carefully and specifically discloses that accepting the Agreement, as Plaintiff did, |
| 21 | "WAIVES ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT." (Fries Decl., |
| 22 | ¶ 11, Ex. C.). The Mutual Arbitration Agreement also clearly identifies what claims are |
| 23 | covered, contains instructions for filing a claim, describes the basic process of |
| 24 | arbitration, informs Plaintiff that Charter will pay the arbitrator's fees and arbitration |
| 25 | filing fees related to same, and informs Plaintiff that the arbitrator will apply governing |
| 26 | law to his claims. (*Id.*) Thus, the Mutual Arbitration Agreement contains no elements |
| 27 | of surprise or undue oppression, and the circumstances surrounding Plaintiff's |
| 28 | agreement are insufficient to render the agreement unenforceable. *See Esquivel*, 2018 |

WL 10806904, at *8 (no procedural unconscionability where same Mutual Arbitration Agreement "was optional and the terms of the agreement were clear").

And since Plaintiff cannot prove procedural unconscionability, the Court need not even consider any substantive unconscionability arguments. *See, e.g., Cripen v. Cent. Valley RV Outlet*, 124 Cal. App. 4th 1159, 1167 (2004) ("In light of our conclusion [that the record discloses no procedural unconscionability], we need not address whether there was a showing of substantive unconscionability"); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("Because the agreements were not procedurally unconscionable . . . we need not reach the question whether the agreements here were substantively unconscionable.")

Regardless, the Agreement also is not substantively unconscionable as it contains the specific terms the California Supreme Court has held to constitute the hallmarks of a proper, fair arbitration agreement: (1) neutral arbitrators; (2) more than adequate discovery; (3) a written award; (4) all relief available in court; and (5) does not require Plaintiff to incur unreasonable costs or fees. *Armendariz*, 24 Cal. 4th at 102; *see also, e.g., Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 422-23 (2000) (enforcing arbitration agreement where it was clear agreement met requirements of *Armendariz* and, thus, was not unconscionable); *Ligman v. Med For Am., Inc.*, No. CVRI2204758, 2023 WL 6889053, at *3-4 (Cal. Super. Ct. July 18, 2023) (holding no substantive unconscionability where *Armendariz* factors met and compelling arbitration).

Thus, the Agreement provides strong protections for the Plaintiff and is not unconscionable. Further, even if there were any aspects of the Agreement that were substantively unconscionable (there are not), enforcement would still be required as those provisions must be severed. *Armendariz*, 24 Cal. 4th at 114 (court may refuse to enforce arbitration agreement "only when an agreement is permeated by unconscionability"); Fries Decl., ¶ 11, Ex. C, § Q (severability clause).

### F. The Court Should Dismiss this Action, or in the Alternative, Stay this Action Pending the Outcome of Arbitration.

Because the Mutual Arbitration Agreement is enforceable and encompasses all of Plaintiff's claims against Charter, the Court should compel arbitration of Plaintiff's employment-related claims and then dismiss the case. The FAA, which governs the Agreement, gives the Court this authority. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). In fact, courts "regularly dismiss actions after granting motions to compel arbitration where all of the plaintiff's claims [are] subject to arbitration." *Campos v. JPMorgan Chase Bank, N.A.*, No. 18-cv-06169-JSC, 2019 WL 827634, at *12 (N.D. Cal. Feb. 21, 2019).

If the Court declines to dismiss the action, the Court should, at a minimum, stay all further proceedings in this action pending completion of the arbitration. Where a dispute is subject to arbitration under the terms of a written agreement, the FAA provides that the district court "*shall* . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). The same considerations "of efficiency for the courts and litigants" also counsel towards an immediate stay "until it is determined whether this dispute is arbitrable." *Galaxia Elecs. Co. v. Luxmax, U.S.A.*, 2017 WL 11566394, at *2 (C.D. Cal. Dec. 28, 2017) (quoting *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)); *see also, e.g., Mayes v. Int'l Mkts. Live*, 2023 WL 6196951, at *1 (W.D. Wash. Sept. 22, 2023) ("[T]he Court must first decide whether this case must proceed to arbitration before any other substantive issue can be addressed. Continued filing of unnecessary motions, declarations, and other filings will only delay the Court's ability to actually address the heart of this case."). Charter therefore respectfully requests a stay of all proceedings in this Court pending resolution of this Motion and the completion of arbitration.

## IV. CONCLUSION

Plaintiff expressly agreed to submit all his claims to arbitration pursuant to the Mutual Arbitration Agreement. Plaintiff has failed to do so, in clear violation of that Agreement. Consequently, and under the well-settled authority discussed herein, Charter respectfully requests that this Court grant its Motion, require Plaintiff to submit his claims to the Solution Channel Program, including arbitration if necessary, and dismiss (or, alternatively, stay) this action in favor of arbitration.

Dated: March 4, 2024           KABAT CHAPMAN & OZMER LLP


By: */s/ Nathan D. Chapman*
Nathan D. Chapman
*Attorneys for Defendants*
Charter Communications, LLC

# PROOF OF SERVICE

## U.S. DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, CA 90071.

On March 4, 2024, I served the foregoing document(s) described **DEFENDANT CHARTER COMMUNICATIONS, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties to this action by delivering a copy thereof addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ **(BY EMAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury of the laws of the United States that the above is true and correct.

Executed on March 4, 2024 at Los Angeles, California.

Windy Thor

**SERVICE LIST**

Allison M. Schulman
**LAW OFFICES OF ALLISON M. SCHULMAN, APC**
1055 W. Seventh Street, Suite 1920
Los Angeles, CA 90017
Telephone: (213) 262-1825
Facsimile: (213) 262-1834
Email: allison@allisonschulman.com

*Attorneys for Plaintiff*