UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN ZUCKERMAN, an individual,<br><br>                                   Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, a limited liability company; and DOES 1 through 100, inclusive,<br><br>                                   Defendants. | Case No.:  24-cv-128-WQH-BJC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Compel Arbitration (and Dismiss, or Alternatively, Stay Case) (ECF No. 10) filed by Defendant Charter Communications, LLC.

## I.    BACKGROUND

On November 15, 2023, Plaintiff Jordan Zuckerman initiated this action by filing a Complaint in the Superior Court of California, County of San Diego (Case No. 37-2923-00049810-CU-OE-CTL) against Charter Communications, LLC ("Charter"), and Does 1 through 100. (ECF No. 1-2.)

On January 18, 2024, Charter filed an Answer. (ECF No. 1-3.)

On January 19, 2024, Charter removed the action to this Court pursuant to 28 U.S.C. § 1332. (ECF No. 1.) The same day, Charter refiled its Answer to the Complaint. (ECF No. 3.)

On March 4, 2024, Charter filed the Motion to Compel Arbitration (and Dismiss, or Alternatively, Stay Case) ("Motion to Compel Arbitration"). (ECF No. 10.)

On March 25, 2024, Plaintiff filed a Response in opposition to the Motion to Compel Arbitration. (ECF No. 13.)

On April 1, 2024, Charter filed a Reply. (ECF No. 14.)

## II.    FACTS

Plaintiff alleges that he was employed by Charter from approximately October 2015 to July 10, 2022. (ECF No. 1-2 ¶ 14.) On October 6, 2017, Charter implemented an alternative dispute resolution program called the "Solution Channel Program." (Fries Decl., ECF No. 10-2 ¶¶ 5–6.) The same day, Charter announced the Solution Channel Program by email to all active non-union employees below the level of Executive President, including Plaintiff. *Id.* ¶¶ 6–8. The email announcement stated, in part: "In the unlikely event of a dispute not resolved through the normal channels, Charter has launched Solution Channel, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration[.]" (Ex. E to Fries Decl., ECF No. 10-2 at 47.) The email further stated:

> By participating in Solution Channel, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about Solution Channel is located on Panorama. Unless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled. Instructions for opting out of Solution Channel are also located on Panorama.

*Id.* The announcement email included a link to the Solution Channel Program web page located on "Panorama," the Charter intranet site accessible to employees. (Fries Decl., ECF No. 10-2 ¶ 10.)

The Solution Channel Program web page on Panorama included a reference and links to Charter's Mutual Arbitration Agreement and the Solution Channel Program Guidelines. *Id.* ¶ 11. Specifically, the web page included the following information:

**Opting Out of Solution Channel**

If you do not opt out of Solution Channel within the designated time, you will be automatically enrolled in Solution Channel and considered to have consented to the terms of the Mutual Arbitration Agreement at that time. To opt-out of Solution Channel, please **click here**. In the new window that will open, click Main Menu- >Self-Service->Solution Channel.

*Id.* ¶ 12. If employees selected the "**click here**" link, PeopleSoft was opened, which is a system used by Charter to electronically collect, maintain, and report on employee information. *Id.* ¶¶ 1, 13. Once employees signed into PeopleSoft using their regular network credentials, they could select "Self Service" from the main menu on the PeopleSoft homepage, and then select "Solution Channel," which would bring them to a page where they could opt out of the Solution Channel Program. *Id.* ¶ 14; Ex. D to Fries Decl., ECF No. 10-2 at 43. If employees wished to opt out of the Solution Channel Program, they checked the box next to the phrase "I want to opt out of Solution Channel," entered their name in an adjacent text field, and clicked "SAVE." (Fries Decl., ECF No. 10-2 ¶ 15.)

Employees who opted out of the Solution Channel Program received a confirmation email from Charter. *Id.* ¶ 16. Employees who did not opt out of the Solution Channel Program on or before November 5, 2017, were enrolled. *Id.* ¶ 17. Charter maintains a record of employees who opted out of the Solution Channel Program by November 5, 2017, and Plaintiff is not on that list. *Id.* ¶¶ 19–22. Charter's records reflect that Plaintiff was a participant in the Solution Channel Program as of November 6, 2017. *Id.* ¶ 23; Ex. F to Fries Decl., ECF No. 10-2 at 50.

The Mutual Arbitration Agreement contains a "NOTICE," which reads:

PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY. IF YOU ACCEPT THE

TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION. YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY

(Ex. C to Fries Decl., ECF No. 10-2 at 15.) Section A of the Mutual Arbitration Agreement states as follows:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your preemployment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

*Id.* The Mutual Arbitration Agreement defines "covered claims" as:

> 1. all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses); unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), claims for unlawful retaliation, claims arising under the Family Medical Leave Act, Americans with Disabilities Act or similar state laws, including unlawful denial of or interference with a leave of absence, claims for unlawful denial of accommodation or failure to engage in the interactive process, whistleblower claims, claims for violations of the Sarbanes-Oxley Act, claims for violations of Occupational Safety and

Health Administration or other safety or occupational health, whether arising before, during or after the termination of your employment, claims related to background and any and all other pre-employment and employment checks, including any claims brought under the Fair Credit Reporting Act and/or similar federal, state or local statutes or ordinances;

…

3.  all disputes related to the arbitrability of any claim or controversy.

*Id.*

On November 15, 2023, Plaintiff filed a Complaint against Charter in the Superior Court of California, County of San Diego. (ECF No. 1-2.) The Complaint alleges the following: (1) disability discrimination in violation of Government Code §§ 12940, *et seq.*; (2) retaliation in violation of Government Code §§ 12940, *et seq.* (the Fair Employment and Housing Act ("FEHA")); (3) failure to accommodate in violation of Government Code §§ 12940, *et seq.* (FEHA); (4) failure to engage in the interactive process in violation of Government Code §§ 12940, *et seq.* (FEHA); (5) failure to prevent discrimination and retaliation in violation of Government Code §§ 12940, *et seq.* (FEHA); and (6) wrongful constructive termination in violation of public policy.

When Charter received the Complaint, it informed Plaintiff's counsel that Plaintiff's claims were subject to arbitration and requested that Plaintiff dismiss his action in favor of arbitration. (Ex. 1 to Chapman Decl., ECF No. 10-1 at 7–8.) Plaintiff refused to submit his claims to arbitration. (Chapman Decl., ECF No. 10-1 ¶ 4.)

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA")[1] provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflect[s] both a liberal

---

[1] Charter contends that the FAA governs the Mutual Arbitration Agreement (ECF No. 10 at 7–9), and Plaintiff does not contest the application of the FAA to the Mutual Arbitration Agreement. The Court applies the FAA in ruling on the Motion to Compel Arbitration.

federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation omitted). The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Generally, in considering whether to compel arbitration, the court must determine two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation omitted). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably [delegate arbitrability to an arbitrator].'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

In determining whether the parties agreed to arbitrate a dispute, courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009). The party seeking to compel arbitration bears "the burden of proving the existence of an enforceable arbitration agreement by a preponderance of the evidence." *Baker v. Italian Maple Holdings, LLC*, 13 Cal. App. 5th 1152, 1157 (Ct. App. 2017). If the moving party satisfies its burden, "the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." *Id.* "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (Ct. App. 2012). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (quotation omitted). "The issues reserved to the courts for decision 'always include' whether an arbitration agreement was formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (quoting *Granite Rock Co. v. Int'l Bro. of Teamsters*, 561 U.S. 287, 297 (2010)). "Accordingly, a court 'should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.'" *Id.* (quoting *Granite Rock*, 561 U.S. at 299). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). This remains "true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

The Court of Appeals has expounded three principles concerning determining who should decide arbitrability:

> First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark*, 43 F.4th at 1030; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

## IV.    DISCUSSION

Charter requests that the Court compel Plaintiff to submit his claims to the Solution Channel Program and dismiss this action or, alternatively, stay the action pending the outcome of arbitration. Charter contends that the parties entered into a valid, enforceable Mutual Arbitration Agreement because Plaintiff did not opt out of the Solution Channel Program within the appropriate time. Charter contends that by entering into the Mutual Arbitration Agreement, the parties delegated to the arbitrator the "gateway" issues of arbitrability. Even if the Court were to reach any threshold arbitrability issues, Charter contends that Plaintiff's claims fall squarely within the scope of the Mutual Arbitration Agreement, and the Mutual Arbitration Agreement is enforceable.[2]

Plaintiff contends that the Court must decide arbitrability because the purported agreement did not "clearly and unmistakably" delegate issues of arbitrability to the arbitrator. Plaintiff contends that Charter fails to meet its burden of establishing that an arbitration agreement exists because the email announcing the Solution Channel Program buried any mention of arbitration, the email did not notify recipients of the rights they would waive, and there is no evidence that Plaintiff ever read the email. Plaintiff contends that even if the Court finds that an agreement was formed, Charter's motion must still be denied because the Agreement is procedurally and substantively unconscionable.

///

///

---

[2] Charter requests that the Court take judicial notice of various California Superior Court and United States District Court decisions. (ECF No. 10-3.) Judicial notice of the requested documents is unnecessary for this Order. Charter's request for judicial notice is denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

### A. Contract Formation

Charter first contends that the parties entered into a valid, enforceable arbitration agreement when Plaintiff did not opt out of the Solution Channel Program within the appropriate time. Plaintiff contends that an agreement was never formed because Charter fails to proffer evidence showing mutual assent.

"Contract-formation issues are always matters for judicial resolution." *Caremark*, 43 F.4th at 1030 (citing *Granite Rock*, 561 U.S. at 297). "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "Mutual assent may be manifested by written or spoken words, or by conduct," and "acceptance of contract terms may be implied through action or inaction." *Id.* (first quoting *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (Ct. App. 1999); then quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991)). Under California law, "it is settled that an employer may unilaterally alter the terms of an employment agreement, provided that such alteration does not run afoul of the Labor Code," and an "employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 619–20 (2009) (citations omitted). "[P]arties may incorporate by reference into their contract the terms of some other document." *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 66 (Ct. App. 2013) (citation omitted). "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Id.* (citation

omitted). "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" *Id.* (citation omitted).

Here, Charter presents evidence showing that it notified Plaintiff of the Solution Channel Program via email. The email informed employees that they would be enrolled in the Solution Channel Program unless "they opt[ed] out of the participating in Solution Channel within the next 30 days," and that the failure to opt out would result in "waiv[ing] the right to initiate or participate in court litigation … involving a covered claim[.]" (Ex. E to Fries Decl., ECF No. 10-2 at 47.) The email also included a link to the Solution Channel Program web page, which provided Charter employees with additional information about the Program, a link to the Mutual Arbitration Agreement, and a link to opt out of the Mutual Arbitration Agreement. (Fries Decl., ECF No. 10-2 ¶¶ 10–14; Ex. D to Fries Decl., ECF No. 10-2 at 43.) Charter's records reflect that Plaintiff did not opt out of the Solution Channel Program within the required timeframe and has been enrolled in the Program since November 6, 2017. (Fries Decl., ECF No. 10-2 ¶¶ 19–20; Ex. F to Fries Decl., ECF No. 10-2 at 50.)

Plaintiff contends that consent cannot be implied by his failure to timely opt out of the Solution Channel Program because he has no recollection of receiving an email announcing the Program. (ECF No. 13 at 15 (citing Zuckerman Decl., ECF No. 13-1 ¶ 2).) However, under the mailbox rule, "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001); *see also Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421 (Ct. App. 2000) ("[A] letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail."). Plaintiff's lack of recollection that he received the email is insufficient to rebut this presumption. *See Reid v. Holcomb*, 63 Cal. App. 89, 94 (Ct. App. 1923) (statement that a party "did not receive the letter is not evidence that he did not receive it"); *Castorena v. Charter Commc'ns, LLC*, No. 2:18-cv-07981-JFW-KS, 2018 WL 10806903, at *4 (C.D. Cal. Dec. 14, 2018) ("Plaintiffs' failure to read their company email

does not negate the sufficiency of the notice provided by Defendant announcing the roll-out of the arbitration program…. A simple denial of receipt is insufficient to rebut the presumption [that the document has been received].”). In any event, Charter presents additional evidence that Plaintiff not only received, but also opened the email announcing the Solution Channel Program between October 6, 2017 and the November 5, 2017 opt-out deadline. (Ex. B to Dan Vasey Decl., ECF No. 14-2; Dan Vasey Decl., ECF No. 14-2 ¶ 7.)

Plaintiff contends that the email cannot be the basis for a valid contract because it buried any reference to the Mutual Arbitration Agreement and the email failed to mention other rights that were waived if Plaintiff did not opt out. The Court disagrees. The email contained a hyperlink to the Solution Channel Program webpage, which included a reference and link to the Mutual Arbitration Agreement. Because employees could access the Mutual Arbitration Agreement and its terms by following the link in the email, the Mutual Arbitration Agreement was “easily available to the contracting parties.” *Id.* “The contract need not recite that it incorporates another document, so long as it guides the reader to the incorporated document.” *Avery*, 218 Cal. App. 4th at 66; *Booker v. Charter Commc'ns, LLC*, No. 20STCV07680, 2020 WL 13838423, at *4 (Cal. Sup. Ct. July 17, 2020) (finding that the language in the Solution Channel announcement email “sufficiently shows the nature of the agreement and the terms were not hidden”); *see Ashirwad*, 2023 WL 3564938, at *6 (same).

The Court finds that the email announcement adequately incorporated the Mutual Arbitration Agreement, and that Plaintiff impliedly consented to the Mutual Arbitration Agreement by failing to opt out of the Solution Channel Program within the designated time. *See Ashirwad*, 2023 WL 3564938, at *5 (concluding that an employee impliedly consented to the same mutual arbitration agreement by failing to opt-out of the Solution Channel Program); *Prizler*, 2019 WL 2269974, at *3 (same).

/ / /

/ / /

24-cv-128-WQH-BJC

**B. Delegation of Arbitrability**

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 68–69. "The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (quotation omitted). "Such [c]ear and unmistakable evidence of agreement to arbitrate arbitrability might include … a course of conduct demonstrating assent … or an express agreement to do so." *Momot v. Mastro*, 652 U.S. 982, 988 (9th Cir. 2011) (quotations omitted); *Mohamed*, 848 F.3d at 1208 (elaborating that "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of an arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement" (quoting *Momot*, 652 F.3d at 988)).

Charter contends that the parties clearly and unmistakably agreed to delegate questions of arbitrability because the Agreement's delegation clause provides that "all disputes related to the arbitrability of any claim or controversy" "will be submitted to arbitration." (ECF No. 10 at 12 (quoting Ex. C to Fries Decl., ECF No. 10-2 at 15).) As Charter correctly notes, "questions of arbitrability" include whether the agreement encompasses the dispute at issue and whether an agreement is enforceable. ECF No. 12 at 20; *Caremark*, 43 F.4th at 1029 ("A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."). However, the Mutual Arbitration Agreement's severability clause provides that:

> [I]f any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent

jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination….

(Ex. C to Fries Decl., ECF No. 10-2 at 18.)

"As a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the court might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 791 (Ct. App. 2012); *see Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 890 (Ct. App. 2008). In this case, even though the delegation clause by itself may clearly and unmistakably delegate arbitrability to an arbitrator, *see, e.g.*, *Maharaj v. Charter Commc'ns, Inc.*, 20-cv-00064-BAS-LL, 2021 WL 5014352 (S.D. Cal. Oct. 27, 2021),[3] certain issues of arbitrability, such as illegality, invalidity, and unenforceability, may be considered by a "court of competent jurisdiction" under the severability clause. (Ex. C to Fries Decl., ECF No. 10-2 at 18.) Read together, these clauses do not clearly and unmistakably delegate the issue of arbitrability to an arbitrator. *See Baker*, 159 Cal. App. 4th at 891–92 (finding that an arbitration agreement did not "clearly and unmistakably" delegate arbitrability when the delegation clause stated that "that issues of enforceability or voidability are to be decided by the arbitrator" because the severability clause "indicated that the court might find a provision unenforceable"); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1565–66 (Ct. App. 2009) (finding no clear and unmistakable delegation where the severability clause provided that "[i]n the event that any provision of this Agreement shall be determined *by a trier of fact of competent jurisdiction* to be unenforceable" because this language suggested that "the trial court also may find a

---

[3] Charter contends that *Maharaj* is "directly-on-point authority" because it held that the exact same delegation clause "clearly and unmistakably indicates that the parties intended to arbitrate all gateway arbitrability issues, including [] unconscionability." (ECF No. 14 at 5 (quoting *Maharaj*, 2021 WL 5014352, at *9).) However, in *Maharaj*, the parties did not raise, and the court did not consider, the issue of whether the severability clause rendered the delegation of arbitrability ambiguous.

provision, including the arbitration provision, unenforceable"); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *6–7 (N.D. Cal. Mar. 14, 2016) ("[D]espite clear language delegating arbitrability to the arbitrator, the issue of delegation is made ambiguous by the language of the arbitration provision that permits modification of the [Agreement] should 'a court of law or equity' hold any provision of the Agreement unenforceable.").

In Reply, Charter contends that the delegation and severability clauses are entirely consistent because the Mutual Arbitration Agreement expressly allows certain claims to be brought in court. In support of this argument, Charter cites *Aanderud v. Superior Court*, 13 Cal. App. 5th 880 (Ct. App. 2017). The Court in *Aanderud* considered a solar power purchase agreement which contained an arbitration provision that permitted claims to be resolved "through binding arbitration or small claims court instead of courts of general jurisdiction." *Id.* at 885–86. The court found that "the general severability clause's reference to a 'court of competent jurisdiction' did not render the delegation clause ambiguous because, first, the arbitration provision allowed certain claims to be brought in small claims court (and, therefore, 'court of competent jurisdiction' referred to small claims court) and, second, although the severability clause contemplated a small claims court might find a provision of the *purchase agreement* to be unenforceable, it did not suggest that a small claims court might decide whether the *arbitration provision* was enforceable." *Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1200 (Ct. App. 2023), review denied (Sept. 13, 2023) (summarizing the court's reasoning in *Aanderud*, 13 Cal. App. 5th 880). Here, as in *Jack*, however, the severability clause "is not a separate provision of an overall contract" but rather "it is a subsection of the arbitration [contract] itself." *Id.* "Thus, in contrast to *Aanderud*, the severability clause in this case very clearly contemplates that a court may decide whether the arbitration [agreement] is enforceable when the [agreement] is challenged based on the limitations of the [agreement] itself." *Id.* at 1200–01.

The Court finds that the parties did not clearly and unmistakably delegate arbitrability to an arbitrator. Accordingly, the Court proceeds to determine arbitrability of the present dispute.

## C. Enforceability of the Agreement

Plaintiff contends that the Mutual Arbitration Agreement is unconscionable and therefore unenforceable. The doctrine of unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Ct. App. 1983). "[P]rocedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016) (cleaned up) (emphasis omitted) (quoting *Armendariz v. Found. Health Pyschcare Servs. Inc.*, 24 Cal. 4th 83, 114 (2000)). Both components need not be present in the same degree; "by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." *Ajamian*, 203 Cal. App. 4th at 795. "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012) (citation omitted).

### 1. Procedural Unconscionability

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* at 246 (citation omitted). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Id.* at 247 (quotation marks and citation omitted). "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Gentry v. Superior Ct.*, 42 Cal. 4th 443, 469 (2007).

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.'" *OTO, LLC v. Kho*, 8 Cal. 5th 111, 125 (2019) (quoting *Armendariz*, 24 Cal. 4th at 114). "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Id.* (quoting *Baltazar*, 62 Cal. 4th at 1245). "[T]he adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015); *Discover Bank v. Superior Ct.*, 36 Cal. 4th 148, 160 (2005) ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.'" *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 530–31 (2024). "Courts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." *Id.* at 531 (internal quotation marks and citations omitted). "Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." *Id.*

Here, it is undisputed that Charter, the party with superior bargaining power, drafted the Mutual Arbitration Agreement, which was a standard agreement used for all employees. Charter does present any evidence that employees had the opportunity to negotiate or modify the terms of the Mutual Arbitration Agreement. Thus, Charter presented the Mutual Arbitration Agreement to Plaintiff, the party with inferior bargaining power, "on a take-it-or-leave-it basis." *OTO, LLC*, 8 Cal. 5th at 125; *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 69 (Ct. App. 2020) (concluding that an arbitration agreement presented by the employer to an employee was an adhesive contract even though

the employee had the opportunity to opt-out). This establishes a minimal degree of procedural unconscionability such that 'closer scrutiny of [the Agreement's] overall fairness is required." *OTO, LLC*, 8 Cal. 5th at 126.

Charter contends that the Mutual Arbitration Agreement is not an adhesion contract because Plaintiff was afforded 30 days to opt-out, citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). In *Ahmed*, the Ninth Circuit held that there is no contract of adhesion where a party is given the opportunity to opt-out. *Ahmed*, 283 F.3d at 1199 ("Ahmed was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form."). However, in *Gentry*, the Supreme Court declined to adopt *Ahmed*'s conclusion that the presence of an opt-out clause renders a contract procedurally consciable. 42 Cal. 4th at 444 n.10 (stating that *Ahmed* was "not persuasive"); *Swain*, 57 Cal. App. 5th at 69 ("[A]n opt out provision does not insulate an arbitration agreement from a finding of procedural unconscionability."); *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1205 (N.D. Cal. 2015) ("Ahmed was abrogated by the California Supreme Court and is no longer good law.").

Moreover, apart from the adhesive nature of the contract, there are other indications that Plaintiff's "failure to opt out of the [Mutual Arbitration Agreement] did not represent an authentic informed choice." *Gentry*, 42 Cal. 4th at 470. In *Gentry*, the California Supreme Court concluded that an arbitration agreement was procedurally unconscionable based, in part, on the employer's failure to adequately explain the disadvantages of arbitration. *Id.* ("First and foremost, the explanation of the benefits of arbitration in the Associate Issue Resolution Handbook was markedly one-sided…. [A]lthough the handbook alluded to some of the shortcomings of arbitration in the general sense, it did not mention any of the additional significant disadvantages that *this particular arbitration agreement* had compared to litigation.") (emphasis in original). Here, likewise, while Charter explains multiple advantages of arbitration in the Solution Channel Guidelines, it does not highlight any of the disadvantages of this arbitration agreement, including the lack

of a right to jury trial, limited discovery, and a shortened limitations period. "[O]nly a legally sophisticated party would have understood that these rules and procedures are considerably less favorable to an employee than those operating in a judicial forum." *Id.* at 471.

The Court finds that the Mutual Arbitration Agreement is procedurally unconscionable.

### 2. Substantive Unconscionability

"Substantive unconscionability examines the fairness of a contract's terms." *OTO, LLC*, 8 Cal. 5th at 129. "This analysis ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as 'overly harsh[,]' 'unduly oppressive[,]' 'so one-sided as to shock the conscience[,]' or 'unfairly one-sided.'" *Id.* (internal citations and quotation marks omitted). "All of these formulations point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Baltazar*, 62 Cal. 4th at 1244 (internal citations and quotation marks omitted). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 1245 (quoting *Sanchez v. Balencia Holding Co., LLC*, 61 Cal. 4th 899, 911–12 (2015)).

Plaintiff contends that several aspects of the Mutual Arbitration Agreement are substantively unconscionable: (a) the lack of mutuality in the covered and excluded claims provisions; (b) the statute of limitations period; (c) the limitation of remedies; (d) the provision mandating arbitration of PAGA claims; (e) the limits placed on discovery; (f) the limits placed on a plaintiff's right to amend his claim; (g) the jury trial and litigation waiver provision; (h) and the provision mandating that claims be submitted to Charter for its review.

### a) Covered and Excluded Claims

"An arbitration agreement need not 'mandate the arbitration of all claims between' the parties." *Ramirez*, 16 Cal. 5th at 531 (quoting *Armendariz*, 24 Cal. 4th at 120).

"However, if an agreement singles out certain claims for arbitration, there must be 'mutuality.'" *Id.* at 532 (citation omitted). An arbitration agreement lacks mutuality "if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. "Instead, a 'modicum of bilaterality is required.'" *Ramirez*, 16 Cal. 5th at 532 (quoting *Armendariz*, 24 Cal. 4th at 117). As the California Supreme Court explained: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" *Armendariz*, 24 Cal. 4th at 117. Substantive unconscionability therefore "turns on both a one-sided result and the absence of justification for it." *Ramirez*, 16 Cal. 5th at 532.

Section B of the Mutual Arbitration Agreement provides that certain covered claims "will be submitted to arbitration." (Ex. C to Fries Decl., ECF No. 10-2 at 15.) Covered claims include, without limitation: (1) claims for unlawful termination and failure to hire or promote; (2) claims for unlawful discrimination, harassment, or retaliation; (3) wage and hour-based claims; (4) claims arising under the Family Medical Leave Act, the Americans with Disabilities Act, and/or similar state laws; (5) claims arising under whistleblower laws or for violations of the Sarbanes-Oxley Act; (6) violations of the Occupational Safety and Health Act or other safety or occupational health laws; (7) claims related to background checks and any and all other pre-employment and employment checks; (8) collection of overpaid wages and commissions; (9) recovery of reimbursed tuition and relocation reimbursement; (10) damage to or loss of Charter property; and (11) recovery of unauthorized charges on Company credit card. *Id.*

Section C of the Mutual Arbitration Agreement "specifically exclude[s] from arbitration" certain claims, including: (1) claims for workers' compensation benefits, (2) claims for unemployment benefits; (3) claims arising under the National Labor Relations

Act; (4) claims arising under the Employee Retirement Income Security Act, or for breach of employee benefits or welfare plans; (5) claims arising under the Health Insurance Portability and Accountability Act of 1996; (6) claims for injunctive or other equitable relief related to unfair competition and the taking, use, or unauthorized disclosure or trade secrets or confidential information; (7) claims arising under separation or severance agreements or non-compete agreements; (8) claims related to corrective action or other performance management; (9) claims older than the statute of limitations applicable to such claims; (10) claims of theft or embezzlement or any criminal conduct; (11) claims over the validity of any party's intellectual property rights; (12) any claims covered by a collective bargaining agreement, severance agreement, or written employment contract; (13) any claims expressly non-arbitrable by statute; and (14) any claims that have been already been filed in federal or state court. *Id.* at 16.

In *Ramirez v. Charter Communications, Inc.*, the California Supreme Court considered whether the same Mutual Arbitration Agreement's covered and excluded claims clauses were substantively unconscionable. It held that "mutuality was lacking" because "a wide range of statutory and policy-based claims that would typically be initiated by an employee are directed into arbitration," such as claims involving unlawful termination, discrimination, harassment, or retaliation; wage and hour disputes; claims pursuant to the Family Medical Leave Act, the Americans with Disabilities Act, the Sarbanes-Oxley Act, or the Occupational Health and Safety Act; and claims for improper background checks. *Ramirez*, 16 Cal. 5th at 533. "On the other hand, only a small subset of claims that would typically be initiated by Charter are similarly situated." *Id.* at 533–34. Additionally, the court emphasized that the Mutual Arbitration Agreement excludes requests for injunctive relief related to unfair competition or unauthorized use of trade secrets or confidential information, which is a "type of claim [that] is more likely to be initiated by Charter." *Id.* at 534.

Charter contends that the Mutual Arbitration Agreement's exclusions "do not manifestly favor Charter over the employee" because certain claims are excluded that are

more likely to be brought by employees, such as claims involving workers' compensation, unemployment benefits, separation or severance agreements, and corrective actions. (ECF No. 14 at 7.) *Ramirez* rejected the same argument. It first noted that because workers' compensation and unemployment insurance are claims that are already excluded from arbitration by law, the Agreement's exclusion of these claims is "illusory." *Ramirez*, 16 Cal. 5th at 534. As to claims related to separation or severance agreements, *Ramirez* found that these claims are "more likely to be employer-initiated." *Id.* While acknowledging that an employee "*could* bring those types of claims, that remote possibility does not change the conclusion that the Agreement, as a whole, tends to exempt claims likely to be made by Charter while directing [the employees'] claims into arbitration." *Id.* "The presence of a modicum of bilaterality will not save a clause that is, in practical effect, unjustifiably one sided." *Id.* (citation omitted).

Thus, the Court finds that the Mutual Arbitration Agreement lacks mutuality. However, "that finding alone is not sufficient to establish unconscionability." *Id.* at 535. As explained above, in addition to a one-sided result, there must also be an "absence of justification" to support a finding of unconscionability. *Id.* at 532. Charter offers no justification in its briefing. In the absence of a justification, the Court finds that the Mutual Arbitration Agreement's lack of mutuality is unconscionable.

### b) Statute of Limitations

Plaintiff contends that the statute of limitations provision is unconscionable because it shortens the statutory time to file Plaintiff's FEHA claims by up to two or more years. Plaintiff also contends that as a result of this limitations period, employees are improperly coerced into waiving their statutory right to a FEHA investigation.

"While parties to an arbitration agreement may agree to shorten the applicable limitations period for bringing an action, a shortened limitations period must be reasonable." *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 731 (Ct. App. 2017). "A contractual period of limitation is reasonable if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation

of the right of action, and the action is not barred before the loss or damage can be ascertained." *Id.* (quoting *Ellis v. U.S. Sec. Assocs.*, 224 Cal. App. 4th 1213, 1223 (Ct. App. 2014)).

At the time the Mutual Arbitration Agreement was executed, a FEHA administrative claim had to be filed with the Department of Fair Employment and Housing ("DFEH") within one year of the employer's discriminatory act. *Baxter*, 16 Cal. App. 5th at 730 (citing Cal. Gov't Code § 12960(d) (2005)); *see O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 281 (Ct. App. 2003) ("[A] judicial determination of unconscionability focuses on whether the contract or any of its provisions were 'unconscionable at the time it was made.'"). Upon filing of the administrative claim, DFEH had up to one year to complete its investigation and issue a "right-to-sue" letter, and a lawsuit alleging FEHA claims had to be filed within one year of the date the DFEH issued a "right-to-sue" letter. *Baxter*, 16 Cal. App. 5th at 730 (citing Cal. Gov't Code §§ 12960(d), 12965(b) (2005)). "Factoring in the time required for the DFEH to investigate and respond to the claim, as a practical matter the outside limit to sue under the FEHA may be as long as three years." *Id.*

Section E of the Mutual Arbitration Agreement provides, in the pertinent part: "The aggrieved party must give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted. To be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body." (Ex. C to Fries Decl., ECF No. 10-2 at 17.) The Solution Channel Guidelines provide that once an employee files a claim with Solution Channel, the employee has 85 days to submit to arbitration. *Id.* at 36 ("Charter will complete its internal review of an arbitrable claim and issue its determination, within 60 days after the claim is submitted. You must indicate whether you wish to proceed with an arbitration hearing within 15 days after receiving the determination.").

Under these provisions, an employee must file a FEHA claim with Charter within one year of "the applicable statutory period under FEHA for filing an administrative claim with DFEH." *Ramirez v. Charter Commc'ns*, 75 Cal. App. 5th 365, 375 (Ct. App. 2022). But as noted, "FEHA grants DFEH up to one year to investigate and issue a 'right-to-sue' letter," and "grants the employee one year after the 'right-to-sue' letter to file an action in court[.]" *Id.* "The practical effect of the [Mutual Arbitration Agreement] is therefore twofold: it cuts the period that would otherwise apply to file a FEHA action in court by as much as two years, and (given that DFEH has up to one year to investigate and issue a 'right-to-sue' letter), it makes it possible that the employee will be compelled to arbitrate before DFEH has completed its investigation and issued a 'right-to-sue' letter." *Id.*

In *Ramirez*, the California Supreme Court held that this limitations period is unconscionable. It reasoned:

> The Agreement requires FEHA claims to be submitted to arbitration. The filing limitation provision requires that any such claim be filed with Solution Channel within the one-year period to submit an administrative claim to DFEH. This limitation truncates the period the Legislature has determined employees need to effectively vindicate their rights. As a result, it potentially deprives Charter employees of meaningful DFEH participation. It is "problematic to require [an] employee to arbitrate statutory FEHA claims before an administrative investigation can be conducted." (*Baxter*, *supra*, 16 Cal.App.5th at p. 734, 224 Cal.Rptr.3d 556.) The "involvement of the DFEH serves an important function [and] '"may be helpful ... because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise."'" (*Ibid.*, quoting *Ellis*, *supra*, 224 Cal.App.4th at p. 1226, 169 Cal.Rptr.3d 752.) The filing limitation substantially shortens the time for fully pursuing a FEHA claim and may preclude a DFEH investigation, rendering it substantively unconscionable.

*Ramirez*, 16 Cal. 5th at 502.

Under *Ramirez*, the Mutual Arbitration Agreement's statute of limitations period is unconscionable.

/ / /

/ / /

### c) Limitation of Remedies

Plaintiff contends that that Section K is unconscionable because it deprives employees of favorable fee-shifting rules under FEHA. Section K of the Mutual Arbitration Agreement provides, in part: "Charter will pay the AAA administrative fees and the arbitrator's fees and expenses. All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party incurring the costs, fees and expenses." (Ex. C to Fries Decl., ECF No. 10-2 at 18.)

The FEHA grants a trial court discretion to award "reasonable attorney's fees and costs" to "the prevailing party." Cal. Gov. Code § 12965(c)(6). "Several courts have held an arbitration provision is substantively unconscionable when it purports to deprive an employee of his or her statutory right to recover attorney fees if the employee prevails … on a discrimination claim under the California Fair Employment and Housing Act." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 251 (Ct. App. 2016); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 709 (Ct. App. 2013) (finding an arbitration agreement unconscionable because it requires each party to bear its own fees).

In Reply, Charter contends that the Mutual Arbitration Agreement permits prevailing parties to recover fees for successful FEHA claims. While Charter does not elaborate on this position, it purportedly relies on language from the Solution Channel Guidelines, which states: "At the discretion of the arbitrator, the prevailing party may recover any remedy that the party would have been allowed to recover had the dispute been brought in court." (Ex. C to Fries Decl., ECF No. 10-2 at 28.) The California Court of Appeal rejected a similar argument in *Carbajal v. CWPSC, Inc*. In that case, as here, the arbitration agreement required parties to bear their own attorney fees while also granting arbitrators authority to award relief under state or federal law. *Carbajal*, 245 Cal. App. 4th at 251. Nonetheless, the Court of Appeal held that the "arbitration provision's plain language requires the parties to be responsible for their own attorney's fees without any exceptions." *Id.* It reasoned: "Nothing in the provision's language suggests the parties intended to limit or qualify this provision by also granting the arbitrators broad authority

*24-cv-128-WQH-BJC*

to award all types of relief authorized by law. '[W]hen there are conflicting clauses the more specific clause controls the more general.'" *Id.* (citation omitted).

Thus, Section K is unconscionable because it denies Plaintiff the remedies he would have if he was litigating his FEHA claim in court. *See Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-1374-W-MSB, 2020 WL 6871048, at *10 (S.D. Cal. Nov. 23, 2020) ("This Agreement requires that each party bear their own attorney fees and denies Plaintiff her statutory right to recover attorney fees if she prevails. In California, such a provision is substantively unconscionable.").

### d) PAGA Claims

Plaintiff contends that Section B of the Mutual Arbitration Agreement is unconscionable because it mandates arbitration of Private Attorney Generals Act ("PAGA") claims, and representative PAGA claims are non-arbitrable.[4] Charter does not dispute that the Mutual Arbitration Agreement compels arbitration of representative PAGA claims, but contends that the Court need not address this issue because Plaintiff does not assert a PAGA claim.

"PAGA authorizes any 'aggrieved employee' to initiate a civil action against a former employer 'on behalf of himself or herself and other current or former employees' to recover civil penalties for violations of the Labor Code ordinarily 'assessed and collected by the Labor and Workforce Development Agency[.]'" *Barrera v. Apple Am. Grp. LLC*, 95 Cal. App. 5th 63, 79 (Ct. App. 2023) (quoting Cal. Lab. Code § 2699). The California Supreme Court has held that where "an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 384 (2014). However, "it is incorrect" that "because the waiver of a representative PAGA claim is

---

[4] Section B of the Mutual Arbitration Agreement requires all employment-related claims, including claims for "unpaid wages," be submitted to arbitration. Plaintiff contends that this language necessarily includes PAGA claims.

unenforceable, it is also substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1264 (9th Cir. 2017). The Ninth Circuit has held that "the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable." *Id.*; *Barrera*, 95 Cal. App. 5th at 89 ("Plaintiffs argued below that 'the arbitration agreement[s] [are] substantively unconscionable on [their] face because [they] contain[ ] an illegal provision that seeks to force PAGA claims into arbitration.' However, as defendants note, this argument is foreclosed by *Viking River*, which upheld the validity of agreements to arbitrate PAGA claims, except to the extent they contained a wholesale waiver to bring a PAGA action in any forum." (citing *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 661 (2022))).

Accordingly, the Court does not find Section B unconscionable on the ground that it mandates arbitration of representative PAGA claims. *See Durruthy*, 2020 WL 6871048, at *10 (rejecting the argument that the same provision is unconscionable because it impermissibly mandates arbitration of representative claims under PAGA).

### e)  Limits on Discovery

The Mutual Arbitration Agreement states that arbitration will be conducted "pursuant to the Solution Channel Program Guidelines." (Ex. C to Fries Decl., ECF No. 10-2 at 17.) The Guidelines provide that "[t]he parties will have 90 days to exchange information and take depositions," and that "[e]ach party will be permitted to take up to four (4) depositions," "20 total interrogatories," and "up to 15 total requests for documents to the other party." *Id.* at 37. In addition, "[a]ny disagreements regarding the exchange of information or depositions will be resolved by the arbitrator to allow a full and equal opportunity to all parties to present evidence that the arbitrator deems material and relevant to the resolution of the dispute." *Id.*

Plaintiff contends that these limitations are unconscionable because 90 days is an insufficient amount of time to conduct discovery, and nothing in the Guidelines allows Plaintiff to issue subpoenas, serve requests for admissions or additional form interrogatories, conduct expert discovery, or allow the arbitrator to order additional

discovery. Charter contends that these discovery provisions are conscionable under California law, and that "even if the specifically-allowed discovery is inadequate for this case," the Guidelines empower the arbitrator to resolve any disputes regarding discovery "to allow a full and equal opportunity to all parties." *Id.* (quoting (Ex. C to Fries Decl., ECF No. 10-2 at 37).)

"[A]dequate discovery is indispensable for the vindication of FEHA claims." *Armendariz*, 24 Cal. 4th at 104. "But adequate discovery does not mean unfettered discovery." *Ramirez*, 75 Cal. App. 5th at 385. "The parties may agree to something less than the full panoply of discovery available in California's discovery statutes." *Id.* (citing *Armendariz*, 24 Cal. 4th at 104–05). Nonetheless, the parties "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)[.]" *Armendariz*, 24 Cal. 4th at 104–05.

> The assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments. Those factors include the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery.

*Ramirez*, 16 Cal. 5th at 539. "Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation." *Id.* "[G]iving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed." *Id.*

In *Ramirez*, the California Supreme Court found that the discovery provisions in the Mutual Arbitration Agreement and Guidelines were not unconscionable. In doing so, the Supreme Court relied on language from the Guidelines that authorizes the arbitrator to resolve "[a]ny disagreements regarding the exchange of information or depositions" to

"allow a full and equal opportunity to all parties to present evidence[.]" *Id.* The Supreme Court reasoned:

> While the language could have been more precise, it seems clear the Agreement and the Guidelines give the arbitrator the authority to resolve "all discovery disputes" in a manner that allows "a full and equal opportunity" to discover and present relevant and material evidence. Understood in this way, if the arbitrator determined additional depositions were necessary to satisfy the *Armendariz* requirement, the Guidelines would permit the arbitrator to order expanded discovery.

*Id.* at 540.

Thus, to the extent that the discovery provisions in the Guidelines may "unfairly hamper[] [Plaintiff] in pursuing a statutory claim," the arbitrator has the authority to order additional discovery. *Id.* at 539. "Such an interpretation of the provisions eliminates any unconscionability." *Id.* at 540.

### f) Limits on the Right to Amend a Claim

Plaintiff contends that the Mutual Arbitration Agreement is unconscionable because it strips Plaintiff of the right to amend his claim before he has had a chance to engage in discovery. Under the Guidelines, "[a] claim may not be amended later than the day of the informal conference with the arbitrator." (Ex. C to Fries Decl., ECF No. 10-2 at 28.) The "informal conference" occurs "within 10 days after the arbitrator is selected," which is before Plaintiff is authorized to engage in discovery. *Id.* at 36. Plaintiff contends that because "California law permits the use of discovery to get information necessary to plead a cause of action," the Agreement's "rule of handicapping Plaintiff from amending his claim before he can even formally seek evidence from Defendant would frustrate this clear mandate, and it is, therefore, unconscionable." (ECF No. 13 at 28.) Plaintiff, however, cites no authority finding an arbitration agreement unconscionable on these grounds, and the Court finds none. The Court concludes that the limits on Plaintiff's right to amend his claim are not unconscionable. *See Durruthy*, 2020 WL 6871048, at *11 (rejecting the same argument because "no California court has found [that a provision prohibiting plaintiff

from amending her claim prior to any opportunity to engage in discovery] unconscionable").

### g) Jury Trial and Litigation Waiver

Plaintiff contends that Section L of the Agreement is unconscionable. Section L provides that "in the event a dispute between you and Charter is not arbitrable under this Agreement for any reason and is pursued in court, you and Charter agree to waive any right to a jury trial that might otherwise exist." (Ex. C to Fries Decl., ECF No. 10-2 at 18.) Charter contends that the jury trial waiver does not apply here because Plaintiff does not assert any non-arbitrable claim that would invoke the jury trial waiver.

"Under California law, pre-dispute jury trial waivers are invalid unless expressly authorized by statute." *In re County of Orange*, 784 F.3d 520, 523 (9th Cir. 2015) (citing *Grafton Partners, L.P. v. Superior Ct.*, 36 Cal. 4th 944, 951–52 (2005)). Courts have held that an arbitration agreement is unenforceable where it "require[s] plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law." *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 107 (Ct. App. 2020). Such waivers are unenforceable "[r]egardless of whether plaintiffs have currently filed [] a [non-arbitrable] claim[.]" *Id.* Thus, the Court finds that the jury trial waiver contained in Section L is unconscionable, despite Plaintiff not filing a claim that invokes this waiver. *See Durruthy*, 2020 WL 6871048, at *12 ("[A]rbitration agreements are substantively unconscionable if they 'require[ ] plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law.' … Plaintiff need not file such a claim for this to be true.").

### h) Unfair Advantage

Plaintiff contends that the Mutual Arbitration Agreement is unconscionable because it gives Charter an unfair advantage by mandating claims be submitted for its review. The Guidelines provide that after a claim is submitted, Charter has 60 days to complete its internal review. Plaintiff cites *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 998 (9th Cir. 2010), which found that a process in which the defendant "receive[s] a 'free peek' at [the]

plaintiff's case" allows a defendant to obtain "an advantage if and when [the] plaintiff were to later demand arbitration." *Id.* at 998 (quoting *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1283 (Ct. App. 2004)). However, in *Nyulassy*, which *Pokorny* cites, the agreement required the employee to "submit to discussions with his supervisor in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration." *Nyulassy*, 120 Cal. App. 4th at 1283. This is not a requirement under the Mutual Arbitration Agreement. Rather, the Mutual Arbitration Agreement states:

> In your claim, you must (1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate. In the event that Charter intends to seek arbitration of a dispute under this Agreement, it must send by certified mail to the individual's last known address, a written claim that meets the requirements of this Section F.

(Ex. C to Fries Decl., ECF No. 10-2 at 17.) "Requiring an employee to provide a description of the 'nature and basis' of a claim, at apparently whatever level of detail the employee chooses, is a far cry from subjecting the employee to potential fact-finding discussions with supervisors." *Durruthy*, 2020 WL 6871048, at *12. Accordingly, the Court concludes that Plaintiff has failed to show that the provision requiring claims be submitted to Charter for its review is substantively unconscionable.

### i) Award of Attorney's Fees to Party Compelling Arbitration

Section K of the Agreement provides, in pertinent part:

> The parties agree and acknowledge, however, that the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

(Ex. C to Fries Decl., ECF No. 10-2 at 18.) Plaintiff contends that under this language, if an employee successfully demonstrates unconscionability, he would still be required to reimburse his employer if the court found the unconscionable provision severable. By requiring the party resisting arbitration to pay the other party's fees, Plaintiff contends that Section K chills access to the courts.

In *Ramirez*, the California Supreme Court held that this provision is substantively unconscionable. The court began its analysis with FEHA's fee-shifting provisions. Under FEFA, a trial court has discretion to award "reasonable attorney's fees and costs" to the "prevailing party." *Ramirez*, 16 Cal. 5th at 540 (quoting Cal. Gov. Code § 12965(c)(6)). FEHA also provides that "a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." *Ramirez*, 16 Cal. 5th at 540 (quoting Cal. Gov. Code § 12965(c)(6)). The court noted a second rule governing FEHA fees and costs from *Armendariz*, which states: "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Ramirez*, 16 Cal. 5th at 540–41 (*Armendariz*, 24 Cal. 4th at 110–11).

The court reasoned:

> Read together, the statutes and *Armendariz* make clear that an arbitration agreement imposed as a condition of employment cannot require an employee to pay attorney fees to the employer in the arbitration of a statutory claim, unless the arbitrator finds that the action was frivolous, unreasonable, or groundless when brought, or that the employee continued to litigate after it clearly became so. The Court of Appeal correctly concluded that Section K could violate the dictates of FEHA and *Armendariz*. The provision unambiguously requires an award of attorney fees, even if the moving party is a defendant in a FEHA action and the arbitrator has made no finding of frivolity, groundlessness, or continued litigation. Permitting payment of attorney fees in these circumstances would be inconsistent with *Armendariz*'s directive that a mandatory arbitration agreement cannot require employees to bear any expense that they would not be required to bear if they were able to

bring the action in court. The provision thus creates a potential obligation to pay costs only in an arbitral setting. The provision would also undermine the public policy embodied in FEHA's asymmetric rule. As a result, the clause is unconscionable.

*Ramirez*, 16 Cal. 5th at 541. The court continued:

> Here, the potential effects of Section K support a finding of unconscionability because the clause does not take into account a situation in which some arguments made by the resisting party are successful. It is possible that a court could find parts of the Agreement unconscionable, sever those parts from the Agreement, and enforce the remainder by compelling arbitration. In such a case, Charter could argue that Section K should be read to require Ramirez to pay Charter's fees and costs because "arbitration [would] in fact [have been] compelled." In other words, Charter could urge that Ramirez should be required to pay Charter's attorney fees even if she successfully asserted that parts of the Agreement as written were unenforceable, but the court cured those defects by severing the offending provisions. Though we take no view here on whether Charter would prevail, the possibility of such an outcome could chill an employee's right to challenge the enforceability of an arbitration agreement….

*Id.*

Here, by requiring the party compelling arbitration to pay fees, Section K of the Mutual Arbitration Agreement "undermine[s] the public policy embodied in FEHA's asymmetric rule," and has the potential to "chill an employee's right to challenge the enforceability of an arbitration agreement." *Id.* Thus, based on the reasons set forth in *Ramirez*, the Court finds that Section K is unconscionable.

**D. Severability**

Charter contends that "[e]ven if the Court were to find any of Plaintiff's arguments regarding the above provisions persuasive, the proper course is to sever them and enforce the remainder of the Agreement, consistent with its terms, California law, and the strong federal policy favoring arbitration." (ECF No. 14 at 10.) Plaintiff contends that it is impossible to sever any single provision because the Agreement is "permeated by unconscionability." (ECF No. 13 at 31.)

California Civil Code § 1670.5 provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). "[T]he statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement." *Armendariz*, 24 Cal. 4th at 122. "But it also appears to contemplate the latter course only when the agreement is 'permeated' by unconscionability." *Id.*

In *Armendariz*, the California Supreme Court found "two factors weigh[ed] against severance" for the agreement at issue in that case. *Armendariz*, 24 Cal. 4th at 124. First, the arbitration agreement contained "more than one unlawful provision." *Id.* "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* Second, given the agreement's lack of mutuality, "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124–25. "Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," and California Civil Code § 1670.5 "does not authorize such reformation by augmentation." *Id.* at 125.

The California Supreme Court provided further guidance on the severability analysis in *Ramirez*. The Supreme Court stated that "[a]t the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.'" *Ramirez*, 16 Cal. 5th at 546. "If so, the contract cannot be cured, and the court should refuse to enforce it." *Id.* However, "[i]f that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id.* "If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires

augmentation to cure the unconscionability, then the court should refuse to enforce the contract." *Id.* at 547. "Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." *Id.* "This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *Id.* "Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." *Id.* "That said, we note that the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause." *Id.*

Here, five aspects of the Mutual Arbitration Agreement are unconscionable: the lack of mutuality, the statute of limitations provision, the limitation of remedies, the jury trial waiver, and the award of attorney's fees to the party compelling arbitration. Taken together, these provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Armendariz*, 24 Cal. 4th at 124. Additionally, given the lack of mutuality, the Mutual Arbitration Agreement is "permeated by an unlawful purpose," and "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124–25. The multiple unconscionable provisions, combined with the lack of mutuality, show that "the central purpose of the contract is tainted with illegality" such that there is no lawful object of the contract to enforce. *Ramirez*, 16 Cal. 5th at 546; *Durruthy*, 2020 WL 6871048, at *13 (concluding that the same offending provisions were not severable because the unconscionability is not "collateral to the main purpose of the agreement," and severance would require the court "to retroactively impose a fundamentally altered singular object of the contract upon each party to which neither

agreed at formation"). While the Court acknowledges that the Mutual Arbitration Agreement contains a severance clause, "the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause." *Ramirez*, 16 Cal. 5th at 547.

Because the offending provisions of the Mutual Arbitration Agreement are not severable, the Court concludes that the Mutual Arbitration Agreement is unenforceable.[5]

## VII.    CONCLUSION

IT IS HEREDY ORDERED that the Motion to Compel Binding Arbitration (ECF No. 10) filed by Defendant Charter Communications, LLC is denied.


Dated:  November 22, 2024

*William Q. Hayes*

Hon. William Q. Hayes
United States District Court

---

[5] Because the Mutual Arbitration Agreement is unenforceable, the Court need not reach the issue of whether to stay or dismiss this action pending the outcome of arbitration.

24-cv-128-WQH-BJC